**KOYO SEIKO CO., LTD. and Koyo Corporation of U.S.A., Plaintiffs,**

v.

**UNITED STATES; The Department of Commerce; Robert A. Mosbacher, Secretary of Commerce, Defendants,**

and

**The Timken Company, Defendant–Intervenor.**

**Court No. 87–10–01012.**

United States Court of International Trade.

Oct. 3, 1990.

Tanaka Ritger & Middleton, H. William Tanaka, Patrick F. O'Leary, Alice L. Mattice and John J. Kenkel, Washington, D.C., for plaintiffs.

Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Washington, D.C., Velta A. Melnbrencis, New York City (Stephanie J. Mitchell, Atty.–Advisor, Office of Chief Counsel for Import Admin., Dept. of Commerce, Washington, D.C., of counsel), for defendants.

Stewart and Stewart, Eugene L. Stewart, Terence P. Stewart, James R. Cannon, Jr. and John M. Breen, Washington, D.C. (Scott A. Scherff, Sr. Corp. Counsel, The Timken Co., Canton, Ohio, of counsel), for defendant-intervenor.

## OPINION

TSOUCALAS, Judge:

This action constitutes yet another challenge to Commerce's final antidumping determination of tapered roller bearings ("TRBs") from Japan. *Final Determination of Sales at Less Than Fair Value; Tapered Roller Bearings and Parts Thereof, Finished and Unfinished, From Japan*, 52 Fed.Reg. 30,700 (Aug. 17, 1987), *amended*, 52 Fed.Reg. 47,955 (Dec. 17, 1987). Pursuant to Rules 56.1 and 56.1(f) of the Rules of this Court, plaintiffs KOYO SEIKO CO., LTD. and KOYO CORPORATION of U.S.A. (collectively KOYO) herein move for partial judgment on the agency record as to Count IV(5)(i) of their amended complaint. The aforementioned count charges Commerce with unlawfully refusing plaintiffs' request for correction of certain clerical errors present in the computer data it submitted to be utilized by the International Trade Administration (ITA) in preparing its final determination. Plaintiffs maintain that immediate resolution of this issue would serve judicial economy as the need for further litigation may well be mitigated. In opposition to said motion defendants and defendant-intervenor join, insisting that Commerce was not required to correct KOYO's clerical errors after the final determination was issued.

## Background

In 1987, responding to a petition from the domestic industry, Commerce initiated an antidumping investigation of TRBs and parts thereof imported from Japan. After an extended investigatory period, Commerce issued its final affirmative dumping determination which assessed an estimated dumping margin of 70.44% for KOYO. 52 Fed.Reg. 30,709. It soon became apparent, however, that the determination was tainted by numerous ministerial errors. Consequently, the ITA informed all interested parties that they would have two weeks to review and comment on the errors contained in the final determination after which an amended determination would be published. Petitioner as well as respondents to the investigation (including plaintiffs herein) addressed a series of clerical and computational errors committed by the ITA. In addition, plaintiffs informed Commerce that a review of the sales listing computer input tapes, which it (KOYO) had submitted to the ITA for calculation of their dumping margin, revealed various transcription errors. Within the allotted two weeks, plaintiffs sought correction of both the errors in its submissions and those for which the ITA was solely responsible,

noting that correction of the clerical errors would not require further investigation as Commerce was already in possession of an accurate hard copy of U.S. sales figures in the administrative record.[1]

Throughout the post-final determination proceedings KOYO maintained that the transcription errors were committed by the company they commissioned to assure that their hard copy data was properly transcribed to a computer format compatible with that used by the ITA. This claim is supported by Commerce's receipt of a communication from Mr. Joseph L. Meier, President of Yield Data Services, acknowledging that his company was retained by plaintiffs to verify the accuracy of the sales listing database and that it was during this procedure that the subject errors occurred. *Plaintiffs' Memorandum in Support of Motion for Partial Judgment on the Agency Record* ("Plaintiffs' Memo") at Appendix I.

Upon evaluation of all comments, the ITA subsequently issued an amended determination reflecting the correction of the errors which had resulted exclusively from agency action. Notwithstanding KOYO's entreaties, the ITA failed to correct the errors on plaintiffs' computer input tapes. Plaintiffs' dumping margin under the amended determination was estimated at 36.21%. 52 Fed.Reg. 47,955.

At no time have defendants disputed plaintiffs' allegations that the errors they sought to have corrected were purely clerical and would not require further examination of the facts, or that their correction would significantly reduce KOYO's dumping margin.[2] Commerce simply maintains that the ITA exercised proper discretion in denying plaintiffs' request for correction of the clerical errors because corrected copies of the computer tapes were not submitted before the final determination was issued. *Defendants' Memo* at 2–3.

Hence, plaintiffs seek to have these clerical errors immediately corrected. For the reasons stated herein, the Court remands to the ITA for correction, the clerical and transcription errors on plaintiffs' U.S. sales listing computer input tapes.

### Discussion

There can be no doubt that Congress intended final determinations to be precisely that. Indeed, if determinations were constantly subject to amendment, "it would be difficult to answer the question as to when a *final* determination would ever be made." *Badger–Powhatan, Div. of Figgie Int'l, Inc. v. United States*, 10 CIT 241, 245, 633 F.Supp. 1364, 1369 (1986) (emphasis in original). The Court further acknowledges that the imposed deadlines must be strictly adhered to if Commerce is to conduct antidumping investigations effectively.

■ This notwithstanding, it is axiomatic that fair and accurate determinations are fundamental to the proper administration of our dumping laws. Consequently, courts have uniformly authorized the correction of any clerical errors which would affect the accuracy of a determination. *See e.g., Ipsco Inc. v. United States*, 14 CIT ——, Slip Op. 90–37, 1990 WL 51968 (April 16, 1990); *Asociacion Colombiana de Exportadores de Flores v. United States*, 13 CIT ——, 704 F.Supp. 1114 (1989); *Daewoo Elec. Co. v. United States*, 13 CIT ——, 712 F.Supp. 931 (1989); *Borlem, S.A. Empreedimentos Industriais v. United States*, 12 CIT ——, Slip Op. 88–77, 1988 WL 63336 (June 15, 1988); *Serampore Indus., Pvt. Ltd. v. United States*, 12 CIT ——, 696 F.Supp. 665 (1988); *Gilmore*

---

1. Commerce requires all respondents to submit hard copies of all the information contained in their respective computer tape submissions for verification purposes. *Defendants' Memorandum in Opposition to Plaintiffs' Motion for Partial Judgment on the Agency Record* ("Defendants' Memo") at 8.

2. With reference to plaintiffs' estimation of what effect the corrections would have on their dumping margin, defendants make no mention other than to state that plaintiffs' dumping margin would not be eliminated. Defendants' Memo at 16, n. 16. The Court therefore presumes that defendants concede that KOYO's dumping margin would be substantially reduced by the correction of the clerical errors at issue.

*Steel Corp. v. United States,* 7 CIT 219, 585 F.Supp. 670 (1984); *Atlantic Sugar, Ltd. v. United States,* 1 CIT 211, 511 F.Supp. 819 (1981).

In fact, this court, in *Florex v. United States,* acknowledged that the collection of actual information is at the heart of the ITA's investigations. 13 CIT ——, ——, 705 F.Supp. 582, 588 (1989). Furthermore, in *Serampore Industries Pvt. Ltd. v. United States Department of Commerce,* a case recently before the court with circumstances analogous to the instant action, it was determined that computer input errors caused by respondent's submissions should be corrected in the interest of accuracy. 12 CIT ——, 696 F.Supp. 665 (1988).

A legislative preference for determinations that are factually correct is further borne out by the recent amendments to title 19, as contained in § 1333 of The Omnibus Trade and Competitiveness Act of 1988 (OTCA).[3] Therein Congress provides for the correction of ministerial errors discovered in final determinations within a reasonable period of time. It is possible to surmise then, that affirming a final determination *known to be based on incorrect data* would not only perpetuate the error, but would also be contrary to legislative intent.

■ Furthermore, "[j]udicial authority supports granting a request for remand if it fosters and promotes fundamental fairness." *Alhambra Foundry Co. v. United States,* 12 CIT ——, ——, 685 F.Supp. 1252, 1262 (1988) (citing *ILWU Local 142 v. Donovan,* 12 CIT ——, ——, 678 F.Supp. 307, 310 (1988)). As this court has previously recognized, failure to reopen a determination which is known to be based on erroneous factual information that would clearly mandate a change in result would itself be arbitrary and capricious. *Timken Co. v. United States,* 7 CIT 319, 320, 1984 WL

3725 (1984). The Court therefore finds it necessary to balance the preference for accurate determinations with the necessity for meaningful final determinations.

■ In this case, there is no evidence that plaintiffs colluded to defraud Commerce. To the contrary, it appears from the record that KOYO notified Commerce of the errors promptly upon their discovery. Moreover, what is most persuasive to the Court is that the use of the incorrect data resulted in such absurd results as would certainly alert the ITA analysts to a discrepancy.[4] In addition, Commerce's failure to provide a compelling explanation for its inept handling of what should have been a routine matter is baffling to the Court. Finally, the fact that Commerce was in possession of a true hard copy of the information at all times, leads the Court to only one fair outcome. In this instance, the interests of fairness and judicial economy would be best served by the immediate correction of KOYO's computer input errors.

Thus, the Court finds that the limited burden which would be imposed on the ITA by virtue of a remand ordering the correction of plaintiffs' input errors is far outweighed by the preference for accuracy in final dumping determinations. As aptly stated in *Serampore,* 13 CIT at ——, 696 F.Supp. at 673, the "Court is loathe to affirm a determination that might be based on a questionable record," as a "contrary holding would be tantamount to saying that once an error initially evades detection, the ITA is thereafter powerless to take remedial steps, thereby compounding the error." *Gilmore Steel,* 7 CIT at 224, 585 F.Supp. at 674.

---

3. Section 1333 of the OTCA requires the administering authority to establish procedures for the correction of "ministerial" errors contained in final determinations and administrative reviews. Ministerial errors are defined by the statute as "errors in addition, subtraction, or other arithmetic function, clerical errors resulting from inaccurate copying, duplication, or the

like, and any other type of unintentional error which the administering authority considers ministerial."

4. The flawed computer tapes rendered both negative and positive dumping margins in excess of 16,000%. *Plaintiffs' Memo* at 9.

**1112**

Accordingly, the Court hereby remands this action to the ITA with directions that the eight transcription errors at issue be corrected to accurately reflect the information contained in the hard copy already included in the administrative record.