BROTHER INDUSTRIES, LTD. AND BROTHER INTERNATIONAL CORP., PLAINTIFFS *v.* UNITED STATES, DEFENDANT, AND SMITH CORONA CORP., INTERVENOR-DEFENDANT

Court No. 88–11–00860

(Decided July 28, 1992)

*Tanaka Ritger & Middleton* (*H. William Tanaka* and *Patrick F. O'Leary*) for the plaintiffs.

*Stuart M. Gerson,* Assistant Attorney General; *David M. Cohen,* Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (*Jane E. Meehan*); Office of the Chief Counsel for Import Administration, U.S. Department of Commerce (*Jeffery C. Lowe*), of counsel, for the defendant.

*Stewart and Stewart* (*Eugene L. Stewart, Terence P. Stewart, James R. Cannon, Jr.* and *Todd C. Fineberg*) for the intervenor-defendant.

### MEMORANDUM AND ORDER

AQUILINO, *Judge*: The plaintiffs have interposed a motion for judgment on the record compiled by the International Trade Administration, U.S. Department of Commerce ("ITA") *sub nom. Portable Electric Typewriters from Japan, Final Results of Redetermination Pursuant to Court Remands* herein per Slip Op. 91–58, 15 CIT 332, 771 F.Supp. 374 (1991), and in *Smith Corona Corp. v. United States*, 15 CIT 355, 771 F.Supp. 389 (1991). These results have led to entry of final judgment in the latter action, while in this action the plaintiffs now pray for a second remand to the ITA for "recalculation of the reported dumping margins found for Brother Industries, Ltd."

### I

Those margins are listed in the remand results at bar as follows:

| Review period | Weighted average (percent) |
|---|---|
| May 21, 1982 through May 20, 1983 | 0.17 |
| May 21, 1983 through May 20, 1984 | 0.00 |
| May 21, 1984 through April 30, 1985 | 0.48 |
| May 1, 1985 through April 30, 1986 | 2.87 |

The results state (at page 2) that Slip Op. 91–58, familiarity with which is presumed herein, directed the ITA to

1) attempt to take into account Brother's submission of a supplemental purchase price sales listing for the 1984–1985 review period * * *; 2) allow Brother an opportunity to attempt to persuade the Department that application of 19 CFR section 353.56 (b) * * * is appropriate for a portion of the 1985–1986 administrative review period * * *; 3) deduct from foreign market value (FMV) the full amount of claimed rebates for the 1984–1985 and 1985–1986 review periods * * *; 4) correct the double deduction of corporate advertising expenses in all four review periods * * *; 5) adjust the

constructed values for three models for differences in circumstances of sale * * *; 6) correct the double addition of packing expenses to the constructed values of three models in the 1983–1984 review period * * *: 7) correct the double counting of certain purchase price sales in the 1983–1984 review period * * *; 8) deduct certain positive sales transactions from the home market sales listing for the 1983–1984 review period * * *; 9) correct a computer programming error that caused an erroneous exporter's sales price (ESP) offset adjustment to be used in the ESP programs for all four review periods * * *; 10) use the contract date as the date of sale for all of Brother's purchase price sales * * *; and 11) deduct selling commissions from FMV for two models for the 1982–1983 review period, and for one model for the 1985–1986 review period * * *.

To the extent the plaintiffs disagree with the results of the agency's attempt to satisfy this mandate, their motion for a second remand is subdivided into two main points, to wit, "certain clerical and ministerial errors should be corrected" and "the ITA's refusal to grant an exchange rate adjustment in the 1985–1986 period is not supported by substantial evidence and is not in accordance with law".

## II

The plaintiffs contend in particular in the first section that the reported dumping margin for 1984–85 is in error, that the 1982–83 and 1985–86 home-market-sales data continue to encompass erroneous information and that the total amount of the mandated deduction of rebates still has not been realized in the foreign-market-value computations.

On their part, the defendant and the intervenor-defendant agree that the margin set forth for 1984–85 is an inadvertent typographical error: it is, in fact, 0.0481 percent and should have been so reported. They also agree, for the most part[1], to remand with respect to full deduction of dealers' period rebates from foreign-market value for 1985–86. However, they do not agree that errors requiring correction remain in the home-market-sales data.

Slip Op. 91–58 directed deletion of "certain positive sales transactions * * * erroneously included in the ITA's home-market data base". 15 CIT at 346, 771 F.Supp. at 388. The plaintiffs now argue that this was effectuated for only one of three transactions, while the defendant responds that all were deleted as directed.

The plaintiffs raised this point in their comments upon release of the ITA's preliminary results[2], and the agency's response thereto indicates that it recognized that error still existed. See Final Results at 23. Nonetheless, and contrary to defendant's present claim of compliance, an ex-

---

[1] The intervenor-defendant agrees that errors were made but argues that Slip Op. 91–58 did not authorize a deduction for every sale. See Memorandum of Points and Authorities in Opposition to Plaintiff's Second Motion for Judgment on the Agency Record, pp. 17–18. However, the plaintiffs have satisfied the ITA, and this court, that "[t]his error can be corrected on remand." Defendant's Memorandum, p. 28.

[2] See Confidential Record Document ("ConfDoc") 6 at 9-10.

cerpt from its computer printout proffered by the plaintiffs seems to show that at least one of the disputed sales has not actually been expunged. *See* Plaintiffs' Reply Memorandum, Attachment 2. A comparison of the figures provided to the ITA in plaintiffs' comments on the preliminary results (and derived from an agency printout dated November 8, 1991) with those now provided by the plaintiffs (and derived from an ITA printout dated December 19, 1991) also indicates that all of the required corrections have not been made.[3]

The plaintiffs request remand in order for the agency to print its home-market computerized data for the typewriter models and months at issue to determine whether the contested information does indeed remain. The request is granted. While it may be true, as the intervenor-defendant argues, that the result of any correction(s) will be *de minimis*, further attention to this issue would not be inappropriate as remand already is necessary on the grounds referred to above. *See, e.g.*, Slip Op. 91–58, 15 CIT at 342, 771 F.Supp. at 384, citing *Koyo Seiko Co. v. United States*, 14 CIT 680, 746 F.Supp. 1108 (1990), and *Serampore Industries Pvt. Ltd. v. U.S. Dep't of Commerce*, 12 CIT 825, 834, 696 F.Supp. 665, 673 (1988).

### III

The remaining question is whether or not the ITA's decision not to lag the foreign-exchange rate according to special rules for investigations now codified at 19 C.F.R. § 353.60(b)[4] is supported by substantial evidence on the record and was otherwise in accordance with law. With the advent of the Trade Agreements Act of 1979, the agency described the rationale of such rules as follows:

> * * * Antidumping investigations are meant to determine whether prices of merchandise sold in the United States are at less than "fair value." When exchange rates are fluctuating substantially, a given dollar price of a product in the United States could change technically from fair to "unfair" literally from day to day, even if the foreign price of the product denominated in the foreign currency also remained constant. This result is not called for by the language or purpose of the Act. It would be unrealistic to expect business to change prices instantaneously to take account of fluctuating exchange rates. So too, weekly price changes could create substantial confusion and inconvenience for the customers of that business.
>
> The regulation, then, allows a reasonable period in which the business may take sustained exchange rate fluctuations into account. The regulation further instructs that temporary fluctuations should not be the sole basis for determinations of less than fair value sales. Businesses are to be given time to assess whether one

---

[3] A comparison of the original foreign-market value of the Zorongo 11 with both the preliminary and final results suggests that the only difference is due to correction of a selling-commission adjustment. A similar circumstance is evident when one compares the original Wordshot foreign-market value with that value in the preliminary results, and a comparison of the preliminary with the final results reflects only deduction of the dealers' rebates. *Compare* Plaintiffs' Memorandum at 8–9 and Attachment 2 *with* ConfDoc 6, pp. 9–12 and Attachment 1.

[4] *Cf.* Slip Op. 91–58, 15 CIT at 342, 771 F.Supp. at 384–85 and n. 16.

currency has truly appreciated against another before changing their pricing practices.

*Melamine in Crystal Form From the Netherlands; Antidumping; Amendment of Final Determination*, 45 Fed.Reg. 29,619, 29,620 (May 5, 1980), recited in *Melamine Chemicals, Inc. v. United States*, 732 F.2d 924, 932 (Fed.Cir. 1984). More recently, in *Industrial Quimica del Nalon, S.A. v. United States*, 13 CIT 1055, 1065, 729 F.Supp. 103, 111–12 (1989), the court stated that, if

> currency fluctuations are beyond the exporter's control in fair value investigations, it is difficult to understand why ITA will apply the rule to eliminate a factor beyond the exporter's control in the initial dumping investigation (a determination using a mere *estimate* of foreign market value), but not in an administrative review (when *actual* foreign market value must be used). If a factor is truly beyond the control of the exporter, the exporter cannot, by definition, make adjustments to compensate. The rationale of the special rule, then, should apply whether the proceeding is a dumping determination or a subsequent review.[5]

This decision was handed down after joinder of issue herein, but this court concluded in Slip Op. 91–58 that it represented an interpretation of existing law which, if applied, might have altered the result and also that *stare decisis* counseled reliance on the reasoning in this action. *See* 15 CIT at 342–43, 771 F.Supp. at 385. The plaintiffs were thereupon afforded an opportunity on remand to attempt to persuade the ITA to grant a foreign-exchange-rate adjustment for the 1985–86 review period.

In that proceeding, the agency concluded that a sustained shift in exchange rates had occurred during that period, a conclusion which is not disputed by the parties, but also that the plaintiffs failed to demonstrate that they had "adequately revised [their] prices given the sustained appreciation of the yen". Final Results, p. 24.

In Slip Op. 91–58, this court stated that "it can be expected that those covered by an antidumping-duty order will factor their expectations as to future rates of exchange into their pricing" and that "it is rational to presume that during subsequent administrative reviews currency adjustment perceived as necessary has already been made." 15 CIT at 343, 771 F.Supp. at 385. With remand to the ITA for possible rebuttal of this presumption, what has been established is that the Japanese yen began steady and sustained appreciation in value as against the dollar after a highly-publicized summit meeting held on September 22, 1985. *See, e.g.*, ConfDoc 9 at 2–3; Record Document 13 at 2; Final Results at 13 ("the efforts of the United States, Japan, West Germany, France and the United Kingdom in the Plaza Accords to reduce the exchange rate value of the dollar vis-a-vis foreign currencies were widely known"). The

---

[5] Emphasis in original. *But compare Sugiyama Chain Co. v. United States*, 16 CIT 526, Slip Op. 92–98 (June 30, 1992). In any event, after remand, the court in *Industrial Quimica* affirmed the agency's decision not to make a foreign–exchange-rate adjustment therein. *See* Slip Op. 91–43, 15 CIT 240, (May 24, 1991).

remand results also establish price increases during the review period on a number, although not all, of plaintiffs' products, but the record at bar does not show that the plaintiffs have sustained their "burden of demonstrating an inability to contemplate exchange rates as they developed." 15 CIT at 343, 771 F.Supp. at 385. Hence, the ITA's denial of their request for application of 19 C.F.R. § 353.56(b) (1988) must be, and it hereby is, affirmed.

## IV

In view of the foregoing, plaintiffs' motion for judgment on the agency remand record is granted to the extent that this action is remanded to the ITA for (1) deletion of the transactions identified by the plaintiffs as still in the home-market data for 1982–83 or 1985–86, (2) deduction of the full amount of the Brother dealers' period rebates and (3) correction of the reported 1984–85 dumping margin from .48 to .0481 percent.

The ITA may have 45 days from the date hereof to carry out these tasks and to report the results thereof to the court, including, if mandated, revised dumping margins. On all other issues, plaintiffs' motion for judgment on the agency remand record must be, and it hereby is, denied.