**RHP BEARINGS, et al., Plaintiffs,**

v.

**UNITED STATES, Defendant,**

**The Torrington Company; Federal–Mogul Corporation, Defendant–Intervenors.**

Slip Op. 95–12.
Court No. 92–07–00503.

United States Court of
International Trade.

Jan. 31, 1995.

Covington & Burling, Harvey M. Applebaum, David R. Grace, Thomas A. Robertson, Michael P. Socarras and Mark F. Kightlinger, Washington, DC, for plaintiffs, RHP Bearings, et al.

Frank W. Hunger, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civil Div., U.S. Dept. of Justice, Marc E. Montalbine, of counsel; Dean A. Pinkert, Stacy J. Ettinger and Stephen J. Claeys, Attys., Office of the Chief Counsel for Import Admin., U.S. Dept. of Commerce, Washington, DC, for defendant.

Stewart and Stewart, Eugene L. Stewart, Terence P. Stewart, Wesley K. Caine, Robert A. Weaver and James R. Cannon, Jr., Washington, DC, for defendant-intervenor, The Torrington Co.

Frederick L. Ikenson, P.C., Frederick L. Ikenson, J. Eric Nissley and Joseph A. Perna, V, Washington, DC, for defendant-intervenor, Federal–Mogul Corp.

**OPINION**

TSOUCALAS, Judge:

The plaintiffs in this case are RHP Bearings, RHP Bearings Inc. and United Precision Industries, Ltd. (collectively "RHP"). RHP raises two challenges to the final determination of the United States Department of Commerce, International Trade Administration ("Commerce"), in *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France, et al.; Final Results of Antidumping Duty Administrative Reviews ("Final Results")*, 57 Fed.Reg. 28,360 (1992).

This action is before the Court on RHP's motion for judgment upon the agency record pursuant to Rule 56.2 of the Rules of this Court.

**Background**

On May 15, 1989, Commerce published notice of the antidumping duty order which underlies this action. *Antidumping Duty Orders and Amendments to the Final Deter-minations of Sales at Less Than Fair Value: Ball Bearings, and Cylindrical Roller Bearings and Parts Thereof From the United Kingdom*, 54 Fed.Reg. 20,910 (1989).

On June 28, 1991, Commerce initiated an administrative review of this order with respect to various manufacturers and exporters for the period May 1, 1990 through April 30, 1991. *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From the Federal Republic of Germany, France, Italy, Japan, Romania, Singapore, Sweden, Thailand, and the United Kingdom; Initiation of Antidumping Administrative Reviews ("Initiation")*, 56 Fed.Reg. 29,618 (1991).

On March 31, 1992, Commerce published notice of the preliminary determination in this second administrative review. *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From the United Kingdom; Preliminary Results of Antidumping Duty Administrative Reviews and Partial Termination of Administrative Reviews ("Preliminary Results")*, 57 Fed.Reg. 10,878 (1992).

On June 24, 1992, Commerce published notice of the consolidated final determination in this review. *Final Results*, 57 Fed.Reg. at 28,360. Amendments to the Final Results were published in *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France, Germany, Italy, Japan, Romania, Singapore, Sweden, Thailand, and the United Kingdom; Amendment to Final Results of Antidumping Duty Administrative Reviews*, 57 Fed.Reg. 32,969 (1992) and *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France, Germany, Italy, Japan, Sweden, and the United Kingdom; Amendment to Final Results of Antidumping Duty Administrative Reviews*, 57 Fed. Reg. 59,080 (1992).

Against this background, RHP now moves pursuant to Rule 56.2 of the Rules of this Court for judgment upon the agency record alleging that Commerce (1) erred in refusing to correct a clerical error pertaining to the description of model RJ244; and (2) erroneously treated RHP's technical service ex-

penses in the U.S. market as direct expenses. *Memorandum in Support of Plaintiffs' Motion for Judgment Upon the Agency Record ("Plaintiffs' Brief")* at 1–12.

## Discussion

The Court has jurisdiction over this matter pursuant to 19 U.S.C. § 1516a(a)(2) (1988) and 28 U.S.C. § 1581(c) (1988).

This Court must uphold Commerce's final determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1988). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). "It is not within the Court's domain either to weigh the adequate quality or quantity of the evidence for sufficiency or to reject a finding on grounds of a differing interpretation of the record." *Timken Co. v. United States*, 12 CIT 955, 962, 699 F.Supp. 300, 306 (1988), *aff'd*, 894 F.2d 385 (Fed.Cir.1990).

### 1. *Clerical Data Input Error*

RHP informed Commerce, after publication of the Preliminary Results, that it had inadvertently misreported that model "RJ244" contained twenty rolling elements. RHP explained that information already existing on the record on RHP's computer tape accurately showed that model RJ244 contained no rolling elements. *Plaintiffs' Brief* at 6.

RHP challenges Commerce's refusal to correct this alleged error arguing that the misdescription of RJ244 materially affected the accuracy of the Final Results. *Id.* at 5. Specifically, RHP contends that the error resulted in the calculation of an inflated constructed value used as the basis of foreign market value ("FMV"). *Final Results*, 57 Fed.Reg. at 28,426. RHP insists that this error be corrected in the interest of fairness and accuracy. *Plaintiffs' Brief* at 5–7.

Commerce, however, maintains that it acted within its discretion in rejecting RHP's new information. *Defendant's Memorandum in Opposition to Plaintiffs' Motion for Judgment Upon the Agency Record ("Defendant's Brief")* at 7–10.

Regarding RHP's requested correction, Commerce's Final Results stated:

[T]here is conflicting information on the record and we cannot conclude that the initial response contains an obvious error.... Therefore, we have not made this correction. This information is also untimely, having been submitted after verifications were completed and publication of our preliminary results, and was not requested by the Department....

[W]e cannot determine from the information that was already on the record that the newly submitted data are accurate or that the originally submitted data were not accurate.

*Final Results*, 57 Fed.Reg. at 28,426. Before the Court, Commerce argues that information which RHP submitted to demonstrate the alleged error is ineffectual as the new information does not specifically indicate that model RJ244 has zero rolling elements. *Defendant's Brief* at 9. Furthermore, Commerce asserts that RHP had adequate time within which to check the accuracy of its July 26, 1991 submission prior to the March 31, 1992 publication of the Preliminary Results. *Id.* at 8.

In rebuttal, RHP states, "The Government does not try to explain how the RJ244 could be an inner ring (*i.e.*, an item that does not contain rolling elements), have 'zero' rows of rolling elements, and yet still contain such rolling elements." *Reply Brief in Support of Plaintiffs' Motion for Judgment Upon the Agency Record* at 3. RHP also points out to the Court that, in the 1988–90 administrative review, Commerce accepted that model RJ244 contained zero rolling elements. *Id.*

 Commerce is not required to correct a respondent's errors when the respondent has reported erroneous data and has failed to timely correct it. *NSK Ltd. v. United States*, 17 CIT ——, ——, 825 F.Supp. 315, 318 (1993). *See NSK Ltd. v.*

*United States,* 16 CIT 745, 749, 798 F.Supp. 721, 725 (1992), *aff'd,* 996 F.2d 1236 (Fed.Cir. 1993). *See also Sugiyama Chain Co. v. United States,* 16 CIT 526, 533, 797 F.Supp. 989, 995 (1992). A respondent in an antidumping proceeding bears the burden of preparing and providing Commerce with an accurate submission within the prescribed statutory deadline. *See NSK Ltd.,* 17 CIT at ——, 825 F.Supp. at 319; *see also Chinsung Indus. Co. v. United States,* 13 CIT 103, 106, 705 F.Supp. 598, 601 (1989).

In this case, RHP had ample time, prior to issuance of the Preliminary Results, to ascertain whether the data it had previously submitted concerning RJ244 was accurate. It failed to do so and attempted to provide Commerce with new factual information [1] by correspondence dated April 14, 1992. This communication occurred after publication of the Preliminary Results and over 180 days after publication of the notice of initiation of this administrative review. *Compare* United Kingdom AR (Pub.) Doc. 243 at 106 with *Initiation,* 56 Fed.Reg. at 29,618, and *Preliminary Results,* 57 Fed.Reg. at 10,878. Therefore, RHP's unsolicited information was untimely. 19 C.F.R. § 353.31(a). This court has stated that it is "imperative the requested information be submitted within a period that allows Commerce sufficient time for adequate analysis and comment while still meeting statutory deadlines." *Ansaldo Componenti, S.p.A. v. United States,* 10 CIT 28, 37, 628 F.Supp. 198, 205 (1986).

■ This court has previously upheld Commerce's rejection of factual information which is untimely submitted. *See, e.g., Man-*

*tex, Inc. v. United States,* 17 CIT ——, ——, 841 F.Supp. 1290, 1310 (1993); *Asociacion Colombiana de Exportadores de Flores v. United States,* 13 CIT 13, 25, 704 F.Supp. 1114, 1124 (1989), *aff'd,* 901 F.2d 1089, *cert. denied,* 498 U.S. 848, 111 S.Ct. 136, 112 L.Ed.2d 103 (1990); *Seattle Marine Fishing Supply Co. v. United States,* 12 CIT 60, 71, 679 F.Supp. 1119, 1128 (1988). However, where corrected information has been untimely filed and rejected by Commerce, the court may remand the case to Commerce for adjustment of the calculations where the "error was so egregious and so obvious that the failure to correct it was an abuse of discretion and undermined the interests of justice." *Tehnoimportexport v. United States,* 15 CIT 250, 258–59, 766 F.Supp. 1169, 1178 (1991). An error, although untimely filed, is eligible for correction if the error is obvious from an examination of the administrative record which is before Commerce at the time of the preliminary results and the newly submitted information is obviously correct. *NSK Ltd.,* 16 CIT at 749, 798 F.Supp. at 725. Therefore, the question before the Court is whether Commerce's determination that the original information submitted by RHP was not obviously in error and that its newly submitted information was not obviously correct was supported by substantial evidence.

Contrary to Commerce's contention that RHP's post-Preliminary Results explanatory information was incomplete or ambiguous, the record reveals that RHP's narrative explanation specifically states that model RJ244 contains "no rolling elements." United Kingdom AR (Pub.) Doc. 243 at 114. The Court agrees with RHP that an inner ring

---

1. § 353.31 Submission of factual information.
 (a) *Time limits in general.* (1) Except as provided in paragraphs (a)(2) and (b) of this section, submissions of factual information for the Secretary's consideration shall be submitted not later than:

 (ii) For the Secretary's final results of an administrative review under § 353.22(c) or (f), the earlier of the date of publication of notice of preliminary results of review or 180 days after the date of publication of notice of initiation of the review; or

 (2) Any interested party ... may submit factual information to rebut, clarify, or correct factual information submitted by an interested party ... at any time prior to the deadline provided in this section for submission of such factual information or, if later, 10 days after the date such factual information is served on the interested party....

 (3) The Secretary will not consider in the final determination or the final results, or retain in the record of the proceeding, any factual information submitted after the applicable time limit.

19 C.F.R. § 353.31(a) (1991).

contains no rolling elements. Rings supply smooth, hard, accurate surfaces for rolling elements to roll on. However, the record does not conclusively indicate that model RJ244 is a mere inner ring.

■ Commerce's examination of the administrative record, at the time that RHP pointed out the alleged error, revealed conflicting evidence pertaining to model RJ244. Commerce stated, "[W]ith respect to the number of rolling elements for the inner ring, there is conflicting information.... Cost data for the part number in question shows costs for an outer bearing, an inner ring, and rolling elements, indicating the product is a bearing, not just an inner ring." *Final Results,* 57 Fed.Reg. at 28,426. Therefore, record evidence in existence at the time that RHP brought the alleged error to Commerce's attention precluded the conclusion by Commerce that there was obvious error on the record and that RHP's newly submitted explanatory information was obviously correct. Hence, the Court finds that Commerce's decision that RHP's originally submitted information was correct, and its reliance on that information to calculate RHP's margin, was supported by substantial evidence on the record and was in accordance with law.

### 2. *Technical Service Expenses*

RHP incurred technical service expenses ("TSEs") generated by its team of engineers in the United Kingdom assisting RHP's customers in the U.K. and abroad with bearing problems. RHP reported its TSEs for the United States and United Kingdom markets as indirect selling expenses. Commerce, however, resorted to best information available ("BIA") and treated RHP's TSEs as direct expenses for United States price ("USP") purposes and as indirect expenses for FMV purposes.

RHP objects to Commerce's classification of its United States TSEs as direct expenses. RHP contends that TSEs are properly considered direct selling expenses only when they are demonstrably directly related to the specific sales under review. RHP denies that any direct relationship exists between its TSEs and the sales under review as it does not maintain any records which allow it to tie its TSEs directly to particular products, sales, customers or markets. *Plaintiffs' Brief* at 7–8. RHP also asserts that if some of its TSEs were variable, they nevertheless were not tied directly to sales. *Id.* at 8.

RHP further argues that Commerce's resort to adverse BIA was improper. According to RHP, Commerce's initial questionnaire sought only a description of RHP's TSEs and the justification for any direct expense claim; it did not request a justification for indirect expenses. RHP also contends that Commerce's request for supplemental information only asked RHP to separate direct and indirect expenses; it did not request a breakdown of fixed and variable costs. *Id.* at 9–10. RHP notes that its records would not have allowed it to segregate fixed and variable costs in any event. *Id.* at 8–9. RHP states that it explained to Commerce that "it had no direct expenses to segregate." *Id.* at 11. Moreover, RHP maintains that Commerce treated RHP's United States and home market TSEs as indirect expenses in the initial investigation and the first administrative review. *Id.* at 8–9.

In the Final Results, Commerce addressed RHP's technical service expenses, stating:

> In the questionnaire, the Department requested that respondents separate technical service expenses into direct and indirect portions. Since RHP could not distinguish between the direct and indirect portions of this expense in either market, we used the best information otherwise available and considered the entire U.S. technical service expense as direct and the entire home market amount as an indirect expense.

*Final Results,* 57 Fed.Reg. at 28,408. Commerce explains that, because of the incentive that exists to report selling expenses as indirect in the United States and direct in the home market because maximizing USP and minimizing FMV decreases dumping margins, it requested that RHP separate direct and indirect expenses. *Defendant's Brief* at 12. Commerce states, "[T]he fact that RHP chooses to keep its financial records in such a way that these expenses cannot be tied to

specific sales does not relieve it of its responsibility to provide Commerce with actual expense information." *Id.* at 13–14. Commerce maintains that, because RHP allocated its TSEs over total global sales revenue instead of submitting actual technical expense information, Commerce is allowed to make an adverse inference and to treat RHP's expenses in a manner which will encourage RHP to submit actual expense information in the future. *Id.* at 14.

Defendant-intervenors, The Torrington Company and Federal–Mogul Corporation, essentially support Commerce's treatment of RHP's TSEs pertaining to U.S. sales. *Response of Defendant–Intervenor The Torrington Company to Plaintiffs' Motion for Judgment Upon the Agency Record* at 1–15; *Response of Federal–Mogul Corporation, Defendant–Intervenor, to Plaintiffs' Motion for Judgment Upon the Agency Record* at 1–9.

█ RHP incurred technical service expenses which it allocated over total global sales. It is uncontroverted that RHP's original TSE information did not tie TSEs to specific products, sales, customers, or markets. Moreover, RHP concedes that it did not segregate its direct and indirect expenses in response to Commerce's request for supplemental information.

The Court has recognized the preference for actual expense information as opposed to allocated expense data, noting:

> The statute and the ITA have a preference for respondents to provide actual expense information as opposed to allocated expense information. As a result, the ITA generally gives respondents an incentive to provide the ITA with actual expense information. The ITA does this by classifying actual expense information in a way which gives greater benefit to the respondent and classifying allocated information in a way which gives a respondent less benefit. *This can lead to differing treatment of the same kind of expenses in the calculation of USP and FMV.*
>
> A respondent benefits by having home market expenses characterized as direct because generally FMV will be adjusted only for direct expenses. If the respon-

dent fails to meet the standard for receiving a direct adjustment to price for its home market expenses, the expense will be treated as an indirect expense because this treatment is adverse to the respondent.... *Allocated expenses in the U.S. market are treated as direct expenses because direct expenses will be deducted from all USP transactions which will, therefore, reduce USP and potentially increase dumping margins. If these expenses were treated as indirect expenses, they would only be deducted from USP in regard to ESP transactions and will, therefore, reduce USP and potentially increase the dumping margin only for ESP transactions. Therefore, treatment of these expenses as indirect expenses would destroy any incentive a respondent has to provide the ITA with actual expense information.*

*Torrington Co. v. United States,* 17 CIT ——, ——, 832 F.Supp. 365, 376 (1993), *modified, in part, remanded,* 17 CIT ——, ——, 850 F.Supp. 1, 5–6 (1993) (citations omitted) (emphasis added). The court has affirmed this method of providing an incentive for respondents to provide actual expense information. *See Torrington Co.,* 17 CIT at ——, 832 F.Supp. at 378; *Koyo Seiko Co. v. United States,* 16 CIT 539, 542–43, 796 F.Supp. 1526, 1530 (1992); *Timken Co. v. United States,* 11 CIT 786, 804, 673 F.Supp. 495, 512–13 (1987).

Accordingly, the Court affirms Commerce's treatment of RHP's technical service expenses in the U.S. market.

### Conclusion

RHP's motion for judgment upon the agency record is denied. The Court finds that Commerce's refusal to correct the alleged error pertaining to model RJ244 and its treatment of RHP's U.S. market technical service expenses are supported by substantial evidence on the record and are in accordance with law. Evidence on the administrative record in existence at the time that RHP highlighted the alleged error relating to model RJ244 did not show obvious error and RHP's newly submitted information was not obviously correct. Therefore, the Court af-

firms Commerce's decision to utilize RHP's originally submitted information in its calculation of RHP's margin. In addition, RHP allocated technical service expenses over total global sales. It failed to tie the TSEs to specific products, sales, customers or markets and failed to provide Commerce with requested information segregating direct and indirect expenses. Therefore, Commerce properly made an adverse inference and treated RHP's U.S. market technical service expenses as direct expenses in order to en-

courage RHP to submit actual information in the future. Accordingly, the Court affirms Commerce's treatment of RHP's U.S. technical service expenses. This case is dismissed.