RHP BEARINGS, ET AL., PLAINTIFFS *v.* UNITED STATES, DEFENDANT, AND
FEDERAL-MOGUL CORP., AND TORRINGTON CO., DEFENDANT-INTERVENORS

Court No. 93–08–00470

(Dated November 27, 1995)

*Covington & Burling (Harvey M. Applebaum, David R. Grace* and *Mark F. Kightlinger)* for plaintiffs.

*Frank W. Hunger,* Assistant Attorney General; *David M. Cohen,* Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice *(Jeffrey M. Telep);* of counsel: *Michelle Behaylo, Stacy J. Ettinger* and *Anna Park,* Attorney-Advisors, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, for defendant.

*Frederick L. Ikenson, P.C. (Frederick L. Ikenson, Larry Hampel* and *Joseph A. Perna, V)* for defendant-intervenor Federal-Mogul Corporation.

*Stewart and Stewart (Terence P. Stewart, Wesley K. Caine, Geert De Prest* and *Myron A. Brilliant)* for defendant-intervenor The Torrington Company.

## OPINION

TSOUCALAS, *Judge:* Plaintiffs, RHP Bearings, RHP Bearings Inc. and United Precision Industries, Ltd. (collectively "RHP"), are manufacturers, importers and/or exporters of ball bearings and cylindrical roller bearings ("antifriction bearings" or "AFBs") from the United Kingdom subject to the proceeding below. RHP contests certain aspects of the final determination of administrative review of the United States Department of Commerce, International Trade Administration ("Commerce"), entitled *Final Results of Antidumping Duty Administrative Reviews and Revocation in Part of an Antidumping Duty Order ("Final Results"),* 58 Fed. Reg. 39,729 (1993), as amended, *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France, Germany, Italy, Japan, Romania, Singapore, Sweden, Thailand, and the United Kingdom; Amendment to Final Results of Antidumping Duty Administrative Reviews,* 58 Fed. Reg. 42,288 (1993), *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France and the United Kingdom; Amendment to Final Results of Anti-*

*dumping Duty Administrative Reviews,* 58 Fed. Reg. 51,055 (1993), and *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From Japan; Amendment to Final Results of Antidumping Duty Administrative Reviews,* 59 Fed. Reg. 9,469 (1994).

## BACKGROUND

On July 6, 1992, Commerce initiated an administrative review of antidumping duty orders covering antifriction bearings (other than tapered roller bearings) for the period of May 1, 1991 through April 30, 1992. *See Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof; Initiation of Antidumping Administrative Reviews and Request for Revocation of Order (in Part),* 57 Fed. Reg. 29,700 (1992).

On April 27, 1993, Commerce published the preliminary determination of the administrative review. *See Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From Japan; Preliminary Results of Antidumping Duty, Administrative Reviews and Partial Termination of Administrative Reviews ("Preliminary Results"),* 58 Fed. Reg. 25,616 (1993).

On July 26, 1993, Commerce published the Final Results at issue. *See Final Results,* 58 Fed. Reg. at 39,729. RHP now moves pursuant to Rule 56.2 of the Rules of this Court for judgment on the agency record, alleging the following actions by Commerce were unsupported by substantial evidence on the agency record and not in accordance with law: (1) refusal to correct data input error whereby plaintiffs reported excess profit levels; (2) refusal to correct clerical error of plaintiffs resulting in the inclusion of "zero price" transactions in the calculation of United States price; (3) clerical error in Commerce's Statistical Analysis Software ("SAS") computer program resulting in the failure to deduct home market indirect selling expenses from constructed value transactions; and (4) treatment of technical service expenses incurred in the home market as direct expenses.[1] *RHP's Brief* at 6–22.

## DISCUSSION

### 1. *Clerical Error Concerning Profit Levels:*

RHP objects to the home market profit levels used by Commerce to calculate constructed value. *RHP's Brief* at 8. RHP contends that after Commerce published the Preliminary Results of the review at issue, RHP notified Commerce that due to a clerical error, RHP had reported profit levels in excess of the eight percent statutory minimum level. *Id.* RHP asserts that in actuality, RHP's home market profit levels were below eight percent and, therefore, requested that Commerce use the statutory level instead of the reported profit levels. *Id.*

---

[1] Count I of plaintiffs' complaint was decided in a separate opinion. *See RHP Bearings v. United States,* 17 CIT 1107, 833 F. Supp. 933 (1993). In accordance with a mandate from the Court of Appeals for the Federal Circuit, the issue was remanded to Commerce and the remand results were affirmed. *See RHP Bearings v. United States,* Slip Op. 95–42 (Mar. 14, 1995). Plaintiffs have abandoned three of the seven remaining counts in their complaint. *See Memorandum in Support of Plaintiffs' Second Motion for Judgment Upon the Administrative Record ("RHP's Brief")* at 6 n.1.

According to RHP, even though the error resulted from its own mistake, Commerce should have corrected the error because it was obvious. *RHP's Brief* at 9. Commerce disagreed in the Final Results stating the following: "The record does not establish that RHP's profit is 'clearly erroneous,' and RHP did not attempt to correct its data in a timely manner. Therefore, we have not changed RHP's reported profit levels." 58 Fed. Reg. at 39,753. RHP challenges this determination by Commerce, stating that financial statements illustrated that 93% of RHP's reported home market sales were made at prices below the cost of production. *RHP's Brief* at 9. In light of this information, RHP submits that it was obvious to Commerce that the profit levels were erroneously reported. *Id.* at 9–10.

Commerce responds that consistent with its practices, it only makes corrections if a clerical error is obvious and "'can be readily identified from information on the administrative record *prior to the preliminary results of review.'" Defendant's Memorandum in Opposition to the Motion of RHP Bearings, RHP Bearings Inc., and United Precision Industries, Ltd. for Judgment Upon the Agency Record ("Commerce's Brief")* at 5 (quoting *Industrial Belts and Components and Parts Thereof, Whether Cured or Uncured, From Italy; Final Results of Antidumping Duty Administrative Review,* 57 Fed. Reg. 8,295, 8,297 (1992) (emphasis added)). Commerce highlights RHP's admission that it raised the issue of the clerical error after the publication of the Preliminary Results. *Commerce's Brief* at 6.

Commerce further argues that the alleged error is not obvious from the administrative record. *Id.* Commerce maintains that the fact that RHP reported many below cost sales does not necessarily mean that RHP's overall profit was less than the statutory minimum. *Id.* at 7. Commerce supports this contention by stating that if RHP's above cost sales produced a substantial profit while its below cost sales incurred only minor losses, it was possible for RHP to have a high profit rate. *Id.* Commerce also emphasizes that there were sales activities not covered in the review period at issue which could have resulted in a reasonable profit level. *Id.*

Finally, Commerce maintains that it does not automatically apply the statutory minimum profit rate of eight percent if a respondent cannot demonstrate its actual profit level. *Id.* Commerce explains that in order for the statutory rate to apply, a respondent must prove that its profit level is below eight percent. Commerce concludes that because it did not conduct a verification of RHP's cost information, it could not determine whether RHP's figures were reliable. *Id.* at 8.

In support of Commerce, Federal-Mogul Corporation ("Federal-Mogul") asserts that RHP failed to prove than any error existed at all. *Opposition of Federal-Mogul Corporation, Defendant-Intervenor, to Plaintiffs' Second Motion for Judgment Upon the Administrative Record ("Federal-Mogul's Brief")* at 5–6. The Torrington Company ("Torrington") also supports Commerce's treatment of RHP's profit

data for determining constructed value. *Opposition of Defendant-Intervenor The Torrington Company to the Motion of Plaintiffs' RHP Bearings, RHP Bearings Inc., United Precision Industries, Ltd. for Judgment Upon the Administrative Record ("Torrington's Brief")* at 5–8.

Commerce's regulations clearly state the time limits for submission of factual information as follows:

> [S]ubmissions of factual information for the Secretary's consideration shall be submitted not later than:
>
> &ast; &ast; &ast; &ast; &ast; &ast; &ast;
>
> (ii) For the Secretary's final results of an administrative review &ast; &ast; &ast; the earlier of the date of publication of notice of preliminary results of review or 180 days after the date of publication of notice of initiation of the review; &ast; &ast; &ast;
>
> &ast; &ast; &ast; &ast; &ast; &ast; &ast;
>
> (3) The Secretary will not consider in the final determination or the final results &ast; &ast; &ast; any factual information submitted after the applicable time limit.

19 C.F.R. § 353.31(a) (1993). It is undisputed that RHP's submission of data correcting the reported profit levels was untimely. *See RHP's Brief* at 8. The Court has acknowledged that "Commerce is not required to correct a respondent's errors when the respondent has reported erroneous data and has failed to timely correct it." *RHP Bearings v. United States,* 19 CIT 133, ___, 875 F. Supp. 854, 856 (1995). *See NSK Ltd. v. United States,* 16 CIT 745, 749, 798 F. Supp 721, 725 (1992), *aff'd,* 996 F.2d 1236 (Fed. Cir. 1993). *See also Sugiyama Chain Co. v. United States,* 16 CIT 526, 533, 797 F. Supp. 989, 995 (1992).

However, even if corrected information has been untimely filed and rejected by Commerce, the Court may remand the issue to Commerce to adjust calculations where the "error was so egregious and so obvious that the failure to correct it was an abuse of discretion and undermined the interests of justice." *Technoimportexport v. United States,* 15 CIT 250, 258–59, 766 F. Supp. 1169, 1178 (1991). In *RHP Bearings,* 19 CIT at ___, 875 F. Supp. at 857, the Court stated: "An error, although untimely filed, is eligible for correction if the error is obvious from an examination of the administrative record which is before Commerce at the time of the preliminary results and the newly submitted information is obviously correct" (citing *NSK Ltd.,* 16 CIT at 749, 798 F. Supp. at 725). Thus, the Court must determine whether the error was obvious based on the administrative record at the time of the publication of the Preliminary Results, and whether the information subsequently submitted by RHP was obviously correct.

In its submission after the publication of the Preliminary Results, RHP reported the following:

> The level of profit as a percentage of cost of production soared to *over 30 percent* in eight of the sixteen sample calculations, and to *over 63 percent* in nearly a fifth of the calculations. In one of the

sample calculations, profit as a percentage of the cost of production was *over 87 percent*.

A review of the record indicates that these profit rates are clearly erroneous, and that the actual profit rates are below the 8 percent minimum rate. As the Department stated in the analysis memorandum addressing the RHP review, it disregarded RHP's below-cost sales in the home market in substantial quantities over an extended period of time.[2]

*Case Brief of RHP Bearings and RHP Bearings Inc. ("Case Brief")* P.R. Document No. 195, Fiche 83, Frame 45. RHP referred Commerce to the financial statements which revealed that all three of the Company's manufacturing divisions operated at a loss. *RHP's Brief* at 9.

The Court agrees with Commerce that the information on the record does not support RHP's contention that the error was clearly obvious. An error that requires searching through financial statements is not obvious. In addition, as Commerce points out, there are plausible explanations for the discrepancy between the home market profit levels reported and RHP's below cost sales. RHP does not assert that all of its sales were made at prices below the cost of production. *See RHP's Brief* at 9. As such, it is possible that the sales that were not made at below cost produced high profits.

RHP's reliance on *Koyo Seiko Co. v. United States,* 14 CIT 680, 746 F. Supp. 1108 (1990), is misplaced as the facts of the instant case are readily distinguishable. In *Koyo,* the Court remanded to Commerce to correct errors brought to its attention during post-final determination proceedings. In its reasoning, the Court stated that "what is most persuasive * * * is that the use of the incorrect data resulted in such absurd results as would certainly alert the ITA analysts to a discrepancy." 14 CIT at 683, 746 F. Supp. at 1111. The "absurd results" were "both negative and positive dumping margins in excess of 16,000%." *Id.* at 683 n.4, 746 F. Supp. at 1111 n.4. RHP does not argue that those results are analogous to the results in the case at bar.

A further distinction from the facts of *Koyo,* is that the alleged errors are not clearly clerical or transcription errors. In *Koyo,* no further factual analysis would have been necessary to correct the clerical errors. *Id.* at 682, 746 F. Supp. at 1110. In contrast, RHP's error would require Commerce to further examine the facts. There is no evidence supporting RHP's contention that the untimely submitted information was obviously correct. Broad statements that the reported profit levels were inaccurate are not enough to require Commerce to find that the actual profit rates were below eight percent. In *Sugiyama,* 16 CIT at 533, 797 F. Supp. at 996, the court upheld Commerce's refusal to correct errors due to the plaintiffs' reporting of erroneous credit expense figures for sales pertaining to related home market distribution. The court observed that "if the burden of compiling, checking, rechecking, and finding mis-

---

[2] The public record of this administrative review is designated "P.R."

takes in the submission of Plaintiffs were placed upon Commerce, it would transform the administrative process into a futility." *Id.* at 531, 797 F. Supp. at 994. In reference to the specific errors alleged, the court stated:

> The errors in the instant case do not appear to be inadvertent clerical or transcription errors. The alleged errors reported on the tape might be Plaintiffs' failure to correctly calculate their home market credit expense or a failure to correctly report to Commerce the formula actually used on its computer tape and printout * * *. The errors may have been substantial and substantive from Plaintiffs' point of view. They were certainly not inadvertent clerical or transcription mistakes. They were not obvious.

*Id.* at 532, 797 F. Supp. at 995. Similarly, RHP's erroneous reporting of its profit levels is not a simple clerical or transcription error. The error could be due to RHP's failure to accurately calculate the profit levels. Commerce should not be required to determine whether RHP properly calculated its own profit levels. Plaintiffs "cannot expect Commerce, with its limited resources, to serve as a surrogate to guarantee the correctness of submissions." *Murata Mfg. Co. v. United States,* 17 CIT 259, 265, 820 F. Supp. 603, 607 (1993) (citing Sugiyama, 16 CIT at 532, 797 F. Supp. at 995). Hence, the Court finds that Commerce's rejection of RHP's untimely submission of profit level data is supported by substantial evidence on the agency record.

2. *Clerical Error Concerning "Zero Price" Transactions:*

RHP claims that due to a clerical error, it inadvertently included in its response a group of "zero price" transactions that were actually stock transfers. *RHP's Brief* at 10. According to RHP, when it transferred stock within its warehouse during the period of review, it recorded two "zero price transactions," one with a negative quantity and one with a positive quantity. *Id.* RHP submits that due to a clerical error, when the "positive-quantity transaction" was reported, a space was inadvertently deleted from the relevant invoice number. *Id.* at 10–11. RHP explains that as a result of this error, the "positive-quantity transactions" were not matched against the "negative-quantity transactions" and, therefore, the transactions did not cancel each other out. *Id.* at 11. RHP argues that Commerce improperly treated these transactions as samples ignoring RHP's submission of an affidavit of the President of RHP Bearings Inc. explaining RHP's standard practice with respect to internal stock transfers. *Id.* RHP asserts that these "transactions" were not actually transactions or samples but, rather, "record-keeping notations to account for internal stock transfers." *Id.*

RHP further contends that this error was evident from the record and not based on the submission of new factual information. *Id.* at 11–12. RHP maintains that by comparing the vendor numbers contained on the list of those vendors who received samples with the vendor numbers for the zero-price transactions reported, it is clear that only seven of the reported zero-price transactions were samples while the remainder

were internal stock transfers. *Id.* at 12. RHP maintains that fairness and accuracy require the correction of this clerical error. *Id.* at 12–13. RHP further claims that its arguments are consistent with Commerce's established policy of correcting obvious clerical errors. *Id.* at 13.

In the Final Results, Commerce declined to correct the error stating the following:

> The Department's general practice is only to correct clerical errors if the existence of the errors and the accuracy of the correction can be determined from the existing administrative record. The alleged error is not evident from the record, and the factual information submitted by RHP is untimely. Therefore, we included the alleged stock transfers in our analysis.

*Final Results,* 58 Fed. Reg. at 39,780. Commerce supports this decision by arguing that it is not responsible for a respondent's failure to accurately report its own data. *Commerce's Brief* at 9. Commerce points out that RHP had ten months between the time of its first submission and the publication of the Preliminary Results within which to check the accuracy of its data. *Id.* at 9–10. Commerce also asserts that RHP was in the best position to discover its own error. *Id.* at 10–11.

Commerce further responds that it is only required to correct an error on the basis of an untimely submission if the error is obvious from the administrative record at the time the error is brought to Commerce's attention. *Id.* at 11. According to Commerce, there was no obvious evidence in the administrative record concerning the alleged error. *Id.*

Federal-Mogul and Torrington both support Commerce's refusal to correct the alleged error concerning "zero-price" transactions. *Federal-Mogul's Brief* at 8–10; *Torrington's Brief* at 9–12.

The first issue is whether RHP submitted new factual information. The Court is of the opinion that the affidavit of Alistair Crannis attached to RHP's Case Brief constituted new factual information. *See Affidavit of Alistair Crannis,* P.R. Document No. 195, Fiche 83, Frames 66–68. RHP attempts to distinguish the affidavit from factual submissions by labeling it a document "intended to assist in the interpretation of an *obvious* inconsistency." *RHP's Brief* at 11 n.2. RHP's characterization, however, begs the question by assuming the error is obvious. As discussed below, the Court finds that the error is not obvious and, therefore, the affidavit is more than a mere explanation of an obvious error. The affidavit is in fact the type of factual information that is barred if it is untimely submitted pursuant to 19 C.F.R. § 353.31(a).

There is no question that the factual submission on May 18, 1993, three weeks after the publication of the Preliminary Results, was untimely. It is also clear from the Affidavit of Alistair Crannis that RHP could have notified Commerce of the error at an earlier date:

> Although RHP Bearings Inc. produced this list last fall, and was thus aware of the clerical error underlying the inclusion of these stock transfer transactions in RHP sales records, the effort was not addressed in RHP's response to the Department's questionnaire.

> Consequently, these transactions were inadvertently included in RHP's questionnaire response.

P.R. Document No. 195, Fiche 83, Frame 68. RHP does not explain why it waited until the publication of the Preliminary Results to notify Commerce of an error it had discovered months earlier. This Court stated in *RHP Bearings,* "[a] respondent in an antidumping proceeding bears the burden of preparing and providing Commerce with an accurate submission within the prescribed statutory deadline." 19 CIT at 137, 875 F. Supp. at 857 (relying on *NSK Ltd. v. United States,* 17 CIT 590, 593, 825 F. Supp. 315, 319 (1993); *Chinsung Indus. Co. v. United States,* 13 CIT 103, 106, 705 F. Supp. 598, 601 (1989)). RHP knew of the error in the fall of 1992 and the Preliminary Results were published on April 27, 1993. As such, there was ample time for RHP to correct the error within the time limits of 19 C.F.R. § 353.31(a). Thus, in order for RHP to prevail, it must demonstrate that the error was obvious from the administrative record.

Applying the same standards discussed in the Court's analysis of the previous issue, the Court agrees with Commerce that the claimed error was not obvious from the record. The analysis in which RHP urges Commerce to engage undermines the assertion that the error was obvious. It would be too much of a burden to require Commerce to compare a response in one section of a questionnaire to an appendix to another section of a questionnaire to determine whether the respondent made an error. RHP's assertion that Commerce is capable of performing such a task misses the point. *See Reply Brief in Support of Plaintiffs' Motion for Judgment Upon the Agency Record ("RHP's Reply Brief")* at 11. The applicable standard is not whether Commerce possesses the ability to compare data reported in different sections but, rather, whether the "'error was so egregious and so obvious that the failure to correct it was an abuse of discretion and undermined the interests of justice.'" *RHP Bearings, Id.* at 137, 875 F. Supp. at 857 (quoting *Technoimportexport,* 15 CIT at 258–59, 766 F. Supp. at 1178)). An error that requires the comparison described by RHP does not rise to the level of being obvious or egregious and Commerce neither abused its discretion nor undermined the interests of justice. Thus, Commerce's decision to reject RHP's untimely submission and refuse to correct the alleged error was supported by substantial evidence on the agency record and consistent with law.

### 3. *Error in SAS Computer Program:*

RHP claims that it discovered an error in Commerce's SAS computer program which resulted in the failure of Commerce to deduct home market indirect selling expenses from many RHP constructed value transactions in violation of sections 773(a)(2) & (b) of the Tariff Act of 1930, as amended, 19 U.S.C. §§ 1677b(a)(2) & (b) (1988). *RHP's Brief* at 13–14. RHP contends that in spite of Commerce's agreement to correct the error, it failed to do so in the Final Results. *Id.* at 16.

At the oral argument held on December 8, 1994, Commerce stated that it would inform the Court as to whether it had indeed failed to correct the error. By letter dated December 12, 1994, Commerce suggested that a remand is necessary to correct the error in the SAS computer program.

In light of Commerce's failure to correct the error for the Final Results, the Court agrees that a remand is necessary. As such, the Court remands to correct the error in the SAS computer program.

### 4. *Technical Service Expenses:*

During the period of review, RHP incurred technical service expenses ("TSEs") generated by its technical service department in the United Kingdom which provided support to customers in the United States, the United Kingdom and third countries. RHP reported its TSEs as indirect selling expenses in both the United States and United Kingdom markets. Commerce, however, treated RHP's technical service expenses as direct expenses for United States price ("USP") purposes and as indirect expenses for home market purposes. *See Final Results,* 58 Fed. Reg. at 39,742.

RHP claims that Commerce improperly classified its United States TSEs as direct expenses. According to RHP, Commerce only treats TSEs as direct selling expenses when a respondent demonstrates that the expenses are directly related to the specific sales under investigation. *RHP's Brief* at 17. RHP argues that it does not maintain any records that tie TSEs directly to particular products, customers or markets. *Id.* at 18. RHP points out that Commerce treated all TSEs as indirect expenses in the first administrative review. *Id.*

RHP also objects to Commerce's use of adverse best information available ("BIA"). RHP maintains that the initial questionnaire only requested a description of the expenses and the basis for any claim if the expenses were direct, and never asked for any information concerning expenses reported as indirect. *Id.* at 19–20. In addition, RHP contends that Commerce's supplemental questionnaire did not contain a request for further information on TSEs and did not ask for a breakdown of fixed and variable costs. *Id.* at 20. RHP notes that it could not have supplied such information even if Commerce had requested it. *Id.* RHP concludes that Commerce cannot apply adverse BIA on the basis of the failure of a respondent to supply nonexistent information. *Id.* at 20–21.

Commerce addressed RHP's technical service expenses in the Final Results, stating:

> In the questionnaire, we requested that respondents separate technical service expenses into direct and indirect portions, stating that direct selling expenses were those services that could be directly related to sales of the subject merchandise. Because there is an incentive for respondents to report selling expenses as indirect in the Unites States and direct in the home market, there is a burden on respondents to demonstrate "the indirectness of United States expenses and the directness of home market expenses." When

respondents fail to report technical service expenses in direct and indirect portions, it is our practice to treat the expenses as direct in the United States and as indirect in the home market.

\* \* \* \* \* \* \*

RHP also did not separate its technical service expenses into direct and indirect portions. RHP was further aware of the Department's requirements because the Department specifically addressed the issue of RHP's technical services in the last review and found that RHP should have separated its expenses into direct and indirect portions. Therefore, we considered RHP's technical service expenses as direct in the United States and as indirect in the home market.

58 Fed. Reg. at 39,742 (citations omitted).

This Court upheld Commerce's approach as applied to RHP during the second administrative review. *RHP Bearings,* 19 CIT at ___, 875 F. Supp at 858–59. RHP's arguments in that case were identical to the ones in the instant case. The Court will not further address this issue as it affirms Commerce's treatment of RHP's technical service expenses in the U.S. market.

CONCLUSION

In accordance with the foregoing opinion, this case is remanded to Commerce to correct the clerical error in the SAS computer program. Commerce's Final Results, to the extent challenged herein, are sustained in all other respects.

The remand results are due within ninety (90) days of the date that this opinion is entered. Any comments or responses by the parties to the remand results are due within thirty (30) days thereafter; any rebuttal comments are due within fifteen (15) days of the date that responses or comments are due.