**SLIP-OP. 01 - 42**

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HONORABLE JAMES L. WATSON,  SENIOR JUDGE**
--------------------------------------------------X

**HOOGOVENS STAAL BV, ET AL.,** )          **CONSOL. CT. NO.  98-04-00926**

                                **Plaintiffs,**     )

                    **v.**                          )

                                                    )

**UNITED STATES,**
                                **Defendant.**    )

-------------------------------------------------X

[Final Results of Redetermination on Remand of U.S. Department of Commerce affirmed with respect to reconsideration of the treatment of warranty and technical service expenses; remanded with respect to Commerce's determination that sales were made at two levels of trade.]

            Dated: April 10, 2001

Powell, Goldstein, Frazer & Murphy LLP (Peter 0. Suchman, Niall P. Meagher, and Susan M. Mathews, Esqs.) for plaintiffs Hoogovens Staal BV and Hoogovens Steel USA, Inc.

Skadden, Arps, Slate, Meagher & Flom LLP (Robert E. Lighthizer, John J. Mangan, and Worth S. Anderson, Esqs.) for plaintiffs U.S. Steel Group, A Unit of USX Corporation, et al.

Stuart E. Schiffer, Acting Assistant Attorney General; David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Erin E. Powell, Trial Attorney); David R. Mason, Attorney, Office of the Chief Counsel for Import Administration, United States Department of Commerce, of counsel, for defendant.

**OPINION AND ORDER**

**WATSON, SENIOR JUDGE:**

**<u>INTRODUCTION</u>**

In <u>Hoogovens Staal BV</u>[1] <u>v. United States</u>, 86 F. Supp.2d 1317, 1333 (CIT 2000), this court remanded to the United States Department of Commerce ("Commerce") the agency's <u>Final Results</u> of the Third Administrative Review of the antidumping duty order on certain cold-rolled carbon steel flat products from the Netherlands[2] ("<u>Final Results</u>") with respect to: (1) clarification of the evidentiary basis for Commerce's finding that Hoogovens' sales in the home and U.S. markets were made at different levels of trade; and (2) reconsideration of Commerce's treatment of Hoogovens' home market warranty and technical service expenses as direct expenses. <u>Id.</u> at 1331. Currently before the court are Commerce's Final Results of Redetermination pursuant to Court Remand, Slip Op. 00-8, dated September 29, 2000 (<u>Remand Results</u>) and the parties' comments. The court presumes familiarity with the court's prior decision.

---

[1]Hoogovens Staal BV is currently named Corus Staal BV and Hoogovens Steel U.S.A., Inc. is currently named Corus Staal USA, Inc. Both the Netherlands steel producer and its U.S. affiliate are collectively referred to as "Hoogovens."

[2]<u>Certain Cold-Rolled Carbon Steel Flat Products from the Netherlands: Final Results of Antidumping Duty Administrative Review</u>, 63 Fed. Reg. 3204 (March 18, 1998). The third administrative review covered one manufacturer/importer of the subject merchandise, Hoogovens Staal B.V., for the period of August 1, 1995, through July 31, 1996.

**DISCUSSION**

**I.**

**LEVEL OF TRADE**

The antidumping statute provides for an adjustment in the dumping margin calculation

for comparison of the prices in home market and U.S. sales made at different levels of trade. 19

U.S.C. § 1677b(a)(7)(A). The court first addresses Commerce's determination in its Remand

Results that Hoogovens' sales were made at two different levels of trade.

In light of the considerable uncertainty created by the Final Results and counsels'

assumptions with respect to the evidentiary basis for Commerce's level of trade determination,[3]

the Final Results were remanded to Commerce, inter alia, "for clarification of the evidentiary

basis for Commerce's factual determinations concerning level of trade"; "[i]f Commerce's

determination that Hoogovens' sales were made at two levels of trade was based on the evidence

of record [rather than "facts available" pursuant to 19 U.S.C. § 1677e(a) and 1677m(d)],

Commerce's remand results should so advise the court, with a summary of what evidence on the

record Commerce relied on." Hoogovens Staal BV, 86 F. Supp. 2d at 1331.

In its Remand Results, at 3-4, after addressing the statutory requirements or prerequisite

conditions for resorting to other facts available (not of record) pursuant to § 1677e(a)(1) or (2)

and § 1677m(d), Commerce states in its Remand Results, at 4, that the "explanation of its [level-

of-trade] determination [in the Final Results] was unclear and thus created confusion with respect

---

[3] From the briefs of counsel, it is apparent they were led to believe by the Final Results that Commerce had invoked, in whole or in part, "facts available" as evidentiary support for its level of trade determination.

to its reference to facts available. * * * For clarification, the Department's determination in this matter was based solely upon information contained on the record of the proceeding." (Emphasis added.) Id.  The foregoing statement establishes that the contentions of counsel for Commerce and the domestic industry that the level of trade determination was, in whole or in part, predicated on Commerce's resort to other facts available was simply counsels' post hoc attempt to create an adequate evidentiary basis in support of Commerce's determination.

As directed by the court, Commerce has provided in its Remand Results a summary of the evidence of record relied on for its level of trade determination with an explanation of its reasoning and conclusions on this issue. Commerce and the domestic industry now maintain that the level of trade determination should be sustained by the court solely on the basis of the evidence of record pursuant to 19 U.S.C. § 1516a(b)(1)(B). Hoogovens contends that there is no substantial evidence of record that its sales were made at two levels of trade during the period of review, and that Commerce erred in not sustaining its claim that all sales were made at one level of trade.

In its Remand Results, at 12-13, Commerce states its determination that Hoogovens' sales were made at two levels of trade is based on an examination of three factors: (1) the difference in the distribution system and channels of trade as between Hoogovens' service center and end-user customers; (2) the greater degree of the selling function of technical services performed by Hoogovens in its sales to end-users than in its sales to service centers; and (3) the pattern of consistent price differences charged by Hoogovens in its sales to service center and end-user customers.

Commerce states in the Remand Results, at 4-6, that "[d]ifferent levels of trade are

characterized by purchasers at different places in the chain of distribution and sellers performing qualitatively or quantitatively different functions in selling to them"; and that different levels of trade necessarily involve differences in selling functions, but differences in selling functions, even substantial ones, are not alone sufficient to establish a difference in level of trade. Commerce found that Hoogovens' sales were made to two classes of customer in both the United States and home market: end-users and service centers. "Service centers" are intermediaries between the producer and end-users and perform the functions of maintaining inventories, further processing steel into special lengths and widths desired by the end-user, and distribution. Commerce found that sales to service centers and end-user customers are in different channels of trade, and the two categories of customer are at a different point in the distribution chain.

In its Remand Results, at 2, Commerce states "[t]he primary issue in dispute on level of trade in this case revolves around the performance of selling functions," Remand Results, at 6; and "[a]t issue in this case is whether sales to end-users and service centers in the United States and home markets were made at different levels of trade based upon, inter alia, the performance of varying levels of the selling function of technical services." Commerce acknowledges that "[t]he critical element in this case is the degree to which the selling functions are performed." Remand Results, at 7 (emphasis added).

Commerce regards the provision of technical service by Hoogovens as a critical selling function in the current review, based both on Hoogovens' claim in the previous review, and evidence on the record in the current review, which, according to Commerce, supports the continued importance to Hoogovens of providing technical service in selling its product to end-users. Remand Results, at 18. However, Hoogovens insisted to Commerce that its sales were

made at the same level of trade since it provides essentially the same services to all customers in all markets, and it is unable to differentiate among the selling functions performed and services offered to different classes of home market and export price customers. Remand Results, at 2. Hoogovens further claims that during the period of review the quantitative aspect or degree to which the technical service selling function was performed varied only by customer, not customer category, and that there were no substantial differences in selling activities provided for the end-user and service center customers.

In rejecting Hoogovens' claim with respect to selling functions, Commerce cites Hoogovens' initial statement in the prior review that it provides "far greater sales assistance" to its end-user customers. Remand Results at 8, 10. Commerce also stressed that Hoogovens is in regular contact with its end-user customers' quality and product development specialists and frequently cooperates with its end-use customers in exploring ways to improve those customers' products; and that in the current review, Hoogovens has stated that the service center customers frequently do not know the end-use of the product at the time of purchase of steel from Hoogovens. Remand Results, at 9. Finally, Commerce posits that although Hoogovens possesses an ability to isolate data on selling functions and determine on its own how such functions vary in kind and degree by customer category and end-use, Hoogovens did not provide such data to support its level of trade claim to the Department. Remand Results, at 8.

Hoogovens vigorously contends that Commerce cites no evidence demonstrating a substantial difference in the selling activities by Hoogovens with respect to its two categories of customer; and that Commerce did not consider the full range of selling activities performed by Hoogovens for its end-user and service center customers, or the similarities of the services

performed in those activities, but instead focused attention on the single selling function of the

provision of technical services.

The court first addresses Commerce's heavy reliance on Hoogovens' initial statement in

the prior review that it provided far greater sales assistance to its end-user customers than to its

service centers. Defendant argues that Hoogovens' current position is inconsistent with the

statements initially made to Commerce in the Second Administrative Review. Hoogovens

contends, however, that since Commerce relies on Hoogovens' statements made in the prior

review, Commerce should not have then turned a blind eye to its own verification process in the

prior review, in which, based on additional information Hoogovens had submitted to Commerce,

the agency determined in its Final Results that the selling functions provided by Hoogovens to all

customers, in both markets, were identical and its sales were made at one level of trade.

Therefore, based on the verification process in the Second Review and overlapping sales in the

second and third review periods,[4] Hoogovens maintains that its initial statements in the Second

Administrative Review are not substantial evidence of the degree to which its selling activities

were performed in the Third Review. The court is constrained to agree.

During the Second Review, notwithstanding Hoogovens initial statements, at verification

Commerce accepted Hoogovens' explanation of its prior statements, and Commerce concluded

---

[4]Hoogovens emphasizes that in this case, the "window period" of home market sales examined in the prior review overlaps with the window period of home market sales in the current review. In the same vein, since the window period of home market sales for the Final Results at issue in this case also overlaps with the period of review for the Fourth Administrative Review. The court may take judicial notice that in the Fourth Review, Certain Cold-Rolled Carbon Steel Flat Products from the Netherlands: Final Results of Antidumping Duty Administrative Review, 64 Fed. Reg. 11825, 11833 (March 10, 1999), Commerce again agreed with Hoogovens that all sales were made at one level of trade, which is consistent with the verification in the Second Review.

that Hoogovens' sales were made at one level of trade in the <u>Final Results</u> of that review.[5] In the

Third Review, Commerce also preliminarily accepted Hoogovens' position there was one level

of trade for all of Hoogovens' sales. <u>See</u> 62 Fed. Reg. at 47421; <u>Hoogovens Staal BV</u>, 86 F.

Supp. at 1327. Petitioners (domestic steel producers), however, objected to Commerce's

preliminary determination in the current review, insisting that Commerce must hold  Hoogovens'

to its initial contradictory statements in the Second Review. <u>Id.</u> In the <u>Final Results</u> of the Third

Review, based <u>inter alia</u> on Hoogovens' contradictory initial statements in the prior review,

Commerce determined that Hoogovens had failed to sustain its burden of proof, "which is

particularly appropriate here, where Hoogovens has reversed its position on the provision of the

services in question." <u>Remand Results</u>, at 19.

While a determination in each administrative review must be based solely on the record

before Commerce covering the particular period of review, in this case, apparently at the urging

of the domestic producer plaintiffs, Commerce has revisited the record of the Second Review for

inconsistent statements made by Hoogovens, but apparently ignored both Hoogovens' prior

explanation of the inconsistency and indeed the verification process and final decision in the

---

[5]In the <u>Final Results</u> of the Second Review, Commerce observed: "Initially, Hoogovens stated that there were multiple levels of trade and that it performed different selling functions for its end-user customers than for its service center customers. However, the LOT chart provided by respondent at verification indicated that the selling functions provided to all customers, in both markets, are identical. Hoogovens explained that after more in-depth examination, it was unable to distinguish among the selling functions provided to different categories of customers. <u>See</u> <u>Verification Report</u>, p. 10. Based upon the results of our verification, we find that there are no differences in LOT. <u>Certain Cold-Rolled Carbon Steel Flat Products from the Netherlands: Final Results of Antidumping Duty Administrative Review</u>, 62 Fed. Reg. 18476, 18481 (April 15, 1997). Hoogovens' position in the Third Review is consistent with the verification process in the prior review.

Second Review. In effect, in the current review Commerce has impeached its own verification

process in the Second Review, and indeed its final level of trade determination. See Certain

Cold-Rolled Carbon Steel Flat Products from the Netherlands: Final Results of Antidumping

Duty Administrative Review, 62 Fed. Reg. 18476, 18481 (April 15, 1997). By considering

evidence of record in the prior review called to Commerce's attention by the domestic producers,

the door was opened for Commerce to also consider Hoogovens' explanation and the verification

process in the Second Review relating to the level of trade determination in the Final Results of

the prior review. Under the circumstances, where Commerce failed to consider its own

verification process in the Second Review, plainly it would be anomalous for the court to now

accord Hoogovens' initial statements in the Second Review the status of "substantial evidence

on the record" in the current review.

Hoogovens also strenuously objects to Commerce's conclusion there were substantial

differences between the provision of technical services to end users (like automotive end-users)

and service center customers, with a greater degree of such services performed for end-user

customers based solely on the description of certain services provided to an end user customer in

Hoogovens' brochure. Remand Results, at 20-22. The brochure relied on by Commerce is not

substantial evidence that there were substantial differences in the technical services performed

for end user and service center customers.

Further, the court does not find the fact that an important home market service center

customer of Hoogovens itself performed technical services for its end-user customers is

substantial evidence that Hoogovens provided no technical services to its service center

customer.

The court turns to Hoogovens' argument that Commerce's reliance on the existence of a pattern of consistent price differences in sales to end-users and service centers, see Remand Results, at 12, is contrary to law. Specifically, Hoogovens maintains that pursuant to the provisions of 19 U.S.C. § 1677b(a)(7)(A)(ii), a pattern of consistent price differences is not a relevant factor in determining whether there are different levels of trade, but rather price differences are to be used only as a factor in determining whether a difference in level of trade has an effect on price comparability, and thus the amount of adjustment. Thus, according to Hoogovens, it is only after two levels of trade have already been established by relevant evidence that Commerce considers whether a pattern of consistent price differences demonstrates that a difference in level of trade affects price comparability. The court concludes that under the circumstances of this case, the pattern of consistent price differences is not substantial evidence of two levels of trade.

Commerce acknowledges in its Remand Results, at 5 and 12, that in determining whether sales were made at different levels of trade, "[n]ormally, the Department only considers the distribution system (e.g., the designation of a customer as a service center or end-user) and the selling functions performed in making its determination of whether sales are made at different levels of trade"; "[a] finding of a pattern of consistent price differences * * * normally provides the basis for calculating the amount of the level-of-trade adjustment." Remand Results, at 12-13 (emphasis added).

In its Remand Results, at 12, Commerce concludes from Hoogovens' statement that the primary factor governing prices charged to end-users and service centers is the "historic commercial reasons related to the relative functions of service centers and end users," citing

Hoogovens' January 24, 1997 Response at 13, that "in this case a continued pattern of price differences between end-users and service centers is indicative of a continuation in the historic functions provided <u>to</u> service centers and end-users." (Emphasis added.) Hoogovens contends that Commerce drew an erroneous conclusion from its statement referring to the functions <u>of service centers and end-users</u> and not the functions provided <u>to</u> its customers. Commerce explains that Hoogovens' statement "directly links the differences in prices that Hoogovens charges to these customer categories to their position in the chain of distribution and the functions performed, and is therefore also reflective of the functions that Hoogovens must perform for end-users and service centers." <u>Remand Results</u>, at 24. Even allowing liberally for an agency's prerogative to make reasonable inferences from the facts of record, <u>Radio Officers' Union v. NLRB</u>, 347 U.S. 17, 50 (1954), Hoogovens' statement is not substantial evidence of the degree of difference of Hoogovens' technical services provided to its two categories of customer.

In reviewing Commerce's <u>Remand Results</u>, the court will sustain Commerce's level of trade determination unless it is "unsupported by substantial evidence or otherwise not in accordance with law." <u>See</u> <u>Thai Pineapple Public Co., Ltd. v. United States</u>, 187 F. 3d 1362, 1365 (Fed. Cir. 1999) (citing <u>Micron Technology, Inc. v. United States</u>, 117 F. 3d 1386, 1393 (Fed. Cir. 1997)(quoting 19 U.S.C. § 1516a(b)(1)(B)(i))). "Substantial evidence is more than a mere scintilla and [it is] such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, taking into account the entire record, including whatever fairly detracts from the substantiality of the evidence." <u>Atlantic Sugar, Ltd. v. United States</u>, 744 F.2d 1556, 1562 (Fed. Cir. 1984).

The court observes at this juncture that in reviewing agency determinations, the court

declines to reweigh or reinterpret the evidence of record. See Consolo v. Federal Maritime

Comm'n, 383 U.S. 607, 620 (1966). Moreover, it is not the province of this court to review the

record evidence to determine whether a different conclusion could be reached, but to determine

whether Commerce's determination is supported by substantial evidence. Inland Steel Industries,

Inc. v. United States, 188 F.3d 1349, 1359 (Fed. Cir.1999) (citing P.P.G. Indus., Inc. v. United

States, 978 F.2d 1232, 1236 (Fed. Cir.1992)). See also Consolo, 383 U.S. at 620 ("[T]he

possibility of drawing two inconsistent conclusions from the evidence does not prevent an

administrative agency's finding from being supported by substantial evidence.").

Observing the foregoing principles, the court nonetheless concludes that Commerce's

finding that Hoogovens' sales were made at two levels of trade is unsupported by substantial

evidence. Indeed, substantial evidence is lacking with respect to the very factor that Commerce

itself views as critical in this case to a proper determination that there were two different levels

trade - - the difference in the degree of technical services performed by Hoogovens for its two

categories of customer.

Significantly, in the Final Results Commerce asserted that Hoogovens' failure to provide

detailed level of trade information left Commerce "with an inadequate record on this issue"

(including the degree to which Hoogovens' technical and quality assurance assistance was

performed), and that Hoogovens had failed to provide "the information necessary for the

Department to make a proper evaluation of LOT * * *." See Final Results, 63 Fed. Reg. at

13206-08.

In the Final Results, Commerce acknowledged that it is the agency's responsibility, not

that of a respondent, to determine what levels of trade exist, and no presumption is made with

respect to level of trade. See Remand Results, at 2, 6. Continuing to express its own misgivings

as to the sufficiency of data with respect to the performance of technical services "the critical

element in this case," Remand Results, at  7, 19, Commerce nonetheless contends its

determination there were two levels of trade is supported by substantial evidence on the record.

Remand Results, at 4.[6] For the reasons stated above, the court is unable to agree.

## II.

### WARRANTY AND TECHNICAL SERVICE EXPENSES

On remand, the domestic producers continue to insist that Hoogovens failed to segregate

home market warranty and technical service expenses into direct and indirect expenses, and such

failure to segregate is fatal to any adjustment by Commerce for warranty and technical service

expenses in the home market. While Hoogovens asserted to Commerce in the review that it had

incurred no direct warranty or technical service expenses in either the U.S. or home market,

Section B response, pages B-37, B-39; Section C response, pages C-32, C-33 (November 18,

1996), worksheet information was reported by Hoogovens (Exhibits B-9 and C-6). The latter

shows a breakdown of the warranty and technical service expenses included in the reported

"indirect" selling expenses so that Commerce could determine that those expenses were related

to specific sales, as opposed to indirect selling expenses, such as the salaries and administrative

overhead of the Quality Assurance Department. Remand Results, at 14.

In its Remand Results, Commerce itself found it was necessary to reverse its position

---

[6]In Hoogovens Staal BV, 86 F. Supp. at 1330, the court observes: "Commerce seemingly
waffles between finding the record inadequate on the issue of selling functions and the lack of
necessary information of record for a proper evaluation of level of trade, and also finding from
the evidence of record that Hoogovens' sales were made at two different levels of trade."

from its initial draft redetermination, and not surprisingly, the domestic producers now seek to hold Commerce to its initial statements and position that the expenses in question are not direct expenses in the home market, and that no adjustment for the expenses may be made in the home market for normal value. Hoogovens and defendant maintain that there was no error with Commerce's treatment of home market warranty and technical service expenses in the Remand Results.

Domestic producers claim that in the final Remand Results, Commerce provided no "reasoned explanation" for its reversal of position in the Draft Remand Results, cited no evidence supporting its determination that the expenses in question were direct, and Commerce came to inconsistent conclusions based on the same evidence of record without explanation. The contentions are patently without merit.

In the Remand Results, at 13-15 and 24-25, Commerce's rationale for treating the expenses in question as direct and not denying an adjustment may be adequately discerned by reading together the split discussion in the Remand Results of warranty and technical service expenses. The rationale is essentially an adoption of Hoogovens' position. It is sufficient if the agency's explanation allows "the reviewing court [to] discern the path of reasoning which led to the final outcome." Asociacion Columbiana de Exportadores de Flores v. United States, 704 F. Supp. 1068, 1071 (1988). See also Wheatland Tube Co. v. United States, 161 F.3d 1365, 1369-70 (Fed. Cir. 1998).

In Torrington Co. v. United States, 82 F.3d 1039 (Fed. Cir. 1996), one of the issues revolved around whether certain aggregated post-sale price adjustments were deductible from foreign value as indirect selling expenses under the ESP offset regulation. The Federal Circuit

held that irrespective of the foreign manufacturer's <u>aggregation of expenses</u> for bookkeeping

purposes (<u>i.e.</u>, for bookkeeping purposes, the expenses were allocated neither on a product-

specific nor customer-specific basis), since the expenses were <u>calculated</u> by the manufacturer on

a product-specific basis, and <u>because of the product-specific and particular sales related nature of</u>

<u>the expenses, Commerce was required to treat the expenses in question as direct</u> rather than

indirect under the ESP offset regulation. The Federal Circuit reasoned that "the allocation of

expenses [by the foreign manufacturer] in a manner different from the calculation of the

expenses, however, does not alter the relationship between the expenses and the sales under

consideration" and Commerce erred in treating as indirect expenses those expenses that were

shown to be direct. Hence, <u>Torrington</u> does not support the position of the domestic producers in

this case.

The court fully agrees with Commerce that domestic producers' reliance on <u>RHP</u>

<u>Bearings v. United States</u>, 875 F. Supp. 854 (CIT 1995) is also misplaced. In <u>RHP</u>, the foreign

producer, which had incurred technical service expenses in the United Kingdom and abroad in

assisting customers with bearing problems reported all of its technical service expenses to

Commerce as indirect expenses, had no records which would allow it to tie its technical service

expenses directly to particular products, sales, customers or markets, and significantly, the

producer refused to segregate its direct and indirect expenses as requested by Commerce. Under

these circumstances, the court upheld Commerce's resort to best information available and its

treatment of all technical service expenses in the U.S. market as direct selling expenses for

purposes of U.S. price and all technical service expenses in the home market as indirect expenses

for purposes of foreign market value. <u>Id.</u> at 858-59. The facts of the current case are quite

distinguishable from those in <u>RHP</u>.

While the domestic producers contend that Commerce's analysis of the data submitted by Hoogovens is flawed and Commerce should have come to the conclusion urged by the domestic producers, Commerce has particular expertise in the analysis and verification of information, and the court can see no reason why it should substitute its judgment for that of the agency, which analyzed the data and concluded that it showed variable warranty and technical service expenses directly related to certain sales. <u>Cf.</u>  <u>NSK Ltd. v. United States</u>, 190 F.3d 1321, 1331 (Fed. Cir. 1999) ("because the statute provides no specific guidelines for the treatment of warranty expenses, Commerce's interpretation of the statute with respect to circumstances of sale adjustments for warranty expenses cannot be disturbed if reasonable," <u>quoting</u> <u>Zenith Elec. Co. v. United States</u>, 988 F.2d 1573, 1584 (Fed. Cir. 1993)).

## <u>CONCLUSION</u>

For the reasons stated above, the <u>Remand Results</u> are sustained with respect to the adjustment of normal value for home market direct expenses of warranty and technical services. Regarding Commerce's level of trade determination, the <u>Remand Results</u> are remanded for further action deemed appropriate by Commerce consistent with this opinion.

Dated: New York, New York
     April 10, 2001                                                    James L. Watson, Senior Judge